# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

JOHN ALLEN TRIMBLE,

      **Plaintiff,**

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,[1]

      **Defendant.**

No. C12-2081

**RULING ON JUDICIAL REVIEW**

---

## TABLE OF CONTENTS

*I.*    *INTRODUCTION* ........................................ 2

*II.*   *PROCEDURAL BACKGROUND* ........................... 2

*III.*  *PRINCIPLES OF REVIEW* .............................. 3

*IV.*  *FACTS* ............................................... 5
    *A.*   *Trimble's Education and Employment Background* ........... 5
    *B.*   *Administrative Hearing Testimony* ...................... 6
        *1.*   *Trimble's Testimony* ........................... 6
        *2.*   *Vocational Expert's Testimony* ................... 7
    *C.*   *Trimble's Medical History* ............................ 7

*V.*   *CONCLUSIONS OF LAW* ............................... 11
    *A.*   *ALJ's Disability Determination* ....................... 11
    *B.*   *Objections Raised By Claimant* ...................... 14

---

[1] Plaintiff originally filed this case against Michael J. Astrue, the Commissioner of Social Security Administration ("SSA"). On February 14, 2013, Carolyn W. Colvin became Commissioner of the SSA. The Court, therefore, substitutes Commissioner Colvin as the Defendant in this action. FED. R. CIV. P. 25(d)(1).

        *1.*     *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . . 14
        *2.*     *Dr. Shivapour's Opinions* . . . . . . . . . . . . . . . . . . . . . . . 17
        *3.*     *Hypothetical Question* . . . . . . . . . . . . . . . . . . . . . . . . 19

*VI.*   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*VII.*  *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff John Allen Trimble on November 21, 2012, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Trimble asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Trimble requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On April 24, 2009, Trimble applied for SSI benefits. In his application, Trimble alleged an inability to work since February 2, 2009 due to chronic complicated migraines. Similarly, on April 29, 2009, Trimble applied for disability insurance benefits. However, in his application, Trimble alleged an inability to work since March 19, 2009, again due to chronic migraine headaches.[2] Trimble's applications were denied on July 14, 2009.

---

[2] At the hearing, Trimble agreed with the ALJ that his disability onset date for both applications was March 19, 2009. *See* Administrative Record at 28; *see also id*. at 10 (ALJ's decision identifying March 19, 2009 as Trimble's disability onset date for both benefits applications). Accordingly, the Court will consider March 19, 2009 as the disability onset date for both of Trimble's applications.

On October 28, 2009, his applications were denied on reconsideration. On December 16, 2009, Trimble requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 5, 2011, Trimble appeared via video conference with his attorney before ALJ Jo Ann L. Draper for an administrative hearing. Trimble and vocational expert Elizabeth M. Albrecht testified at the hearing. In a decision dated April 22, 2011, the ALJ denied Trimble's claims. The ALJ determined that Trimble was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing his past relevant work as a tax preparer. Trimble appealed the ALJ's decision. On September 25, 2012, the Appeals Council denied Trimble's request for review. Consequently, the ALJ's April 22, 2011 decision was adopted as the Commissioner's final decision.

On November 21, 2012, Trimble filed this action for judicial review. The Commissioner filed an Answer on January 24, 2013. On March 27, 2013, Trimble filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a tax preparer. On May 24, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 3, 2013, Trimble filed a reply brief. On December 10, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g).

3

42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

4

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Trimble's Education and Employment Background

Trimble was born in 1968. He is a high school graduate. At the administrative hearing, Trimble testified that he also "did a little bit of college." The record contains a detailed earnings report for Trimble. The report covers the time period of 1985 to 2010. Trimble had minimal earnings (less than $2,700) from 1985 to 1987. During the time period of 1988 to 2007, Trimble earned between $6,804.31 (1988) and $34,092.80 (1997). In 2008, he earned $3,638.40. He has no earnings since 2009.

5

## B. Administrative Hearing Testimony

### 1. Trimble's Testimony

At the administrative hearing, Trimble's attorney asked Trimble what prevented him from working a full-time job. Trimble testified that he suffers from severe migraine headaches that are generally light-induced. Trimble also indicated that his migraines can be triggered by physical exertion. According to Trimble, he gets migraines about twice each week. Additionally, Trimble stated that he is prescribed anti-depressants and goes to mental health counseling every other week. Trimble testified that his medications make him "very tired." He stated he generally goes to bed between 9:30 p.m. and 10:00 p.m. and sleeps until noon. He also often takes a one-hour nap around 2:00 p.m. or 3:00 p.m. Trimble's attorney also inquired about Trimble's functional abilities:

> Q:    . . . Would you have problems with lifting or with sitting or standing or walking?
>
> A:    More walking or standing. I get dizzy a lot with the walking and standing, but not -- the sitting is not as bad. Usually I lay down when I start getting a migraine, though. The best thing is just lay down in the dark with no noise[.]

(Administrative Record at 44.) According Trimble, it usually takes "a couple" of days to recover from a migraine headache. Lastly, Trimble's attorney ask Trimble: "Do you think you're able to work anymore?" Trimble responded:

> Well, that one thing I've been trying to figure out, what I can do, with the light sensitivity. I haven't been able to find out anything that I can do. It seems like every time I go out of doors, I get a migraine. It's not so bad on days like today because it's a little bit overcast. But on bright, sunny days, I don't even go out. I don't even try anymore.

(Administrative Record at 48.)

6

## 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Elizabeth M. Albrecht with a hypothetical for an individual who:

> is limited exertionally to the performance of no more than light work activity, lifting and carrying 20 pounds occasionally, 10 pounds frequently; standing and walking six hours a day, sitting six hours a day.
>
> Now, this individual's exposure to pulmonary irritants, noise and vibration should be limited to no more than occasional. And this individual would do better at not working outside, but would do better working in an indoor environment and probably an indoor environment where sunglasses could be worn.

(Administrative Record at 56.) The vocational expert testified that under such limitations, Trimble could perform his past work as a tax preparer. The ALJ asked a second hypothetical which was identical to the first hypothetical, except that the individual would be absent from work three or more times per month. The vocational expert testified that under such circumstances, Trimble would be precluded from his past work and any other competitive employment.

### C. Trimble's Medical History

On June 25, 2009, Trimble met with Dr. Hamza Ismail, M.D., at the University of Iowa Hospitals and Clinics ("UIHC") to establish care for migraine headaches. Dr. Ismail described Trimble's headache history and symptoms as follows:

> [Trimble] states that apart from migraine headaches he has had no other issues. He says that they started about 5 to 6 years ago and they were not as constant. Now for the past 3 months, they have . . . been constant. He gets them about 2 times in a week and describes them as starting over the left side of his head. He sees some kind of floaters. He feels as if he is 'standing in the ocean and the waves are hitting him.'

7

> They last for about 1 to 2 days and then they go away. He
> does have associated photophobia, phonophobia, and problems
> with smell. Associated nausea is also there. . . . He wears
> sunglasses all the time. Even headlights from the truck when
> they hit his eye, it hurts him and feels like a stab going in his
> eye. It helps him if he is in a dark room. He sleeps a lot
> lately.

(Administrative Record at 330.) Upon examination, Dr. Ismail diagnosed Trimble with migraine headaches. Dr. Ismail opined that Trimble needed prophylactic as well as abortive treatment for his headaches. Dr. Ismail prescribed multiple medications as treatment.

On August 25, 2009, Trimble met with Dr. Ismail for a follow-up appointment. Trimble reported that the frequency of his headaches was reduced, but that he often still had two migraine headaches in one week. Trimble also reported experiencing heartburn at night which caused him to have even more difficulty sleeping, and increased his feelings of tiredness. Dr. Ismail continued his diagnosis of migraine headaches and adjusted Trimble's medication as treatment.

On October 19, 2009, Disability Determination Services ("DDS") referred Trimble to Dr. Seth A. Brown, Ph.D., for a psychological evaluation. Dr. Brown noted that Trimble becomes irritable and feels down when his migraine headaches are intense. Dr. Brown opined that:

> When queried about diagnostic criteria for Major Depressive
> Disorder, [Trimble] only reported fluctuating depressed mood
> and loss of interest in activities but did report fatigue and great
> difficulty sleeping. However, he denied the remaining
> diagnostic criteria for a major depressive episode as well as
> denied current or past suicidal ideation. . . . Although he feels
> quite irritable at times he does not appear to meet diagnostic
> criteria for a mood disorder. . . . Mr. Trimble's level of
> anxiety does not constitute a formalized anxiety disorder, nor
> does it support an adjustment disorder.

8

(Administrative Record at 344.) Dr. Brown concluded that "[i]n regard to his overall abilities, [Trimble] appears to be relatively intact and there are no substantial problems in regard to his memory."[3]

On October 26, 2009, Dr. Myrna Tashner, Ed.D., reviewed Trimble's medical records and provided DDS with a Psychiatric Review Technique assessment for Trimble. Dr. Tashner found no medically determinable impairments, and determined that Trimble had no functional limitations in the areas of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace.

Also on October 26, 2009, Dr. Everett Nitzke, M.D., reviewed Trimble's medical records and provided DDS with a physical residual functional capacity ("RFC") assessment for Trimble. Dr. Nitzke found that Trimble had no exertional, postural, manipulative, visual, or communicative limitations. Dr. Nitzke further determined that Trimble should avoid concentrated exposure to noise, vibration, and fumes, odors, dusts, gases, and poor ventilation. With regard to Trimble's migraine headaches, Dr. Nitzke noted that:

> [Trimble] complains of throbbing pain on the left side of the head. He states that he is extremely sensitive to light, noise and odors. Bright lights cause sharp stabbing pain to the left eye and sometimes to the right eye. He also suffers chest pains, dizziness, hot flashes and cold sweats. He has 3-4 migraine headaches per week. Migraines last 12-24 hours when he is on medication and up to 3 days when he is not. He states that he goes to the doctor's office every other month. He states that the current treatment for migraines is mostly ineffective.

---

[3] Administrative Record at 346.

(Administrative Record at 366.) Dr. Nitzke concluded that Trimble "has been showing improvement and would be capable of the RFC as indicated by 3/19/[10]."[4]

On November 17, 2009, Trimble presented at the UIHC Emergency Room for depressive thoughts associated with ongoing headache pain. Trimble reported that his headache pain is so severe that he often thinks about killing himself. Specifically, the emergency room doctor noted that:

> [Trimble] has suffered from severe, stabbing pain behind his left eye for approximately eight months duration. He states the headache pain is limited to the left eye, and rarely involves the right eye. Pain is worsened by light, noise, and motion. He has associated symptoms of dizziness, unsteady gait, and weakness in his legs. . . . When asked about any suicidal thoughts, Mr. Trimble states that he does have headache pain that is so severe that he has commented that he would be better off dead and "I might as well just shoot myself the pain is so bad." However, he states he has no intentions of hurting himself or killing himself -- just wants to get his pain better controlled. [W]hen the pain is so bad, he feels as if his life is not worthwhile.

(Administrative Record at 407.) Upon examination, Trimble was diagnosed with mood disorder and complex migraine headaches. Doctors recommended a brain MRI for further evaluation, and psychiatric counseling as treatment.

On August 2, 2010, Trimble met with Dr. J.D. Bartleson, M.D., at the Mayo Clinic for a neurologic evaluation. Dr. Bartleson noted that Trimble had been having migraine headaches for approximately eight years, but in the past 18 months he went from having about four migraine headaches per year to having 18 to 23 migraine headaches per month. Dr. Bartleson further noted that Trimble's pain:

---

[4] *Id.* at 368.

> always affects him in his left eye and in his left temple and in
> a vertical line in the center of his forehead. Sometimes, the
> right temple hurts as well. The pain is throbbing in character
> and accompanied by nausea and sometimes vomiting. He also
> has noise and light sensitivity. Exertion will make his
> headache worse if he is having one.

(Administrative Record at 500.) Dr. Bartleson found Trimble's neurologic examination to be "essentially normal." Dr. Bartleson diagnosed Trimble with severe migraine headaches with and without aura. Dr. Bartleson recommended medication as treatment.

On February 18, 2011, at the request of Trimble's attorney, Dr. E. Torage Shivapour, M.D., filled out a "Headaches Residual Functional Capacity" questionnaire for Trimble.[5] Dr. Shivapour diagnosed Trimble with migraine headaches, depression, and anxiety. Dr. Shivapour characterized Trimble's headaches as left-sided, throbbing, and intense. Dr. Shivapour identified the following symptoms associated with Trimble's headaches: nausea/vomiting, malaise, photosensitivity, visual disturbances, mood changes, and difficulty concentrating. Dr. Shivapour indicated that Trimble has 2 to 3 migraine headaches per week, and they are triggered by bright lights, noise, and stress. Dr. Shivapour noted that Trimble's headaches are treated with medication with a variable response to the medication. Dr. Shivapour opined that Trimble would likely miss more than four days each month due to his migraine headaches and treatment for his headaches. Dr. Shivapour also opined that Trimble's prognosis was "fair."

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Trimble is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security

---

[5] Dr. Shivapour is a neurologist at the UIHC who started treating Trimble in March 2010.

regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Trimble had not engaged in substantial gainful activity since March 19, 2009. At the second step, the ALJ concluded from the medical evidence that Trimble had the following severe impairments: migraine headaches. At the third step, the ALJ found that Trimble did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Trimble's RFC as follows:

> [Trimble] has the residual functional capacity to perform light work . . . except: he can lift and carry 10 pounds frequently and 20 pounds occasionally; stand/walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday. [Trimble] should have only occasional exposure to vibration, noise, and pulmonary irritants. [He] would do better not working outside. He would do better working indoors where he could wear sunglasses.

13

(Administrative Record at 14). Also at the fourth step, the ALJ determined that Trimble was capable of performing his past relevant work as a tax preparer. Therefore, the ALJ concluded that Trimble was not disabled.

## B. Objections Raised By Claimant

Trimble argues that the ALJ erred in three respects. First, Trimble argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Second, Trimble argues that the ALJ failed to properly consider the opinions of his treating doctor, Dr. Shivapour. Lastly, Trimble argues that the ALJ provided a flawed hypothetical question to the vocational expert at the administrative hearing.

### 1. Credibility Determination

Trimble argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Trimble maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Trimble's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not

disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

15

In her decision, the ALJ generally determined that:

> After careful consideration of the evidence, the undersigned finds that [Trimble's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Trimble's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 15.) More specifically, the ALJ determined that:

> [Trimble] continues to engage in a broad range of activities of daily living inconsistent with disability. [Trimble] lives independently in an apartment. He is able to perform personal hygiene, prepare meals, and do household chores including laundry. He is able to manage his money. He has a driver's license and drives. He plays on the computer, reads, and listens to music. [Trimble] has legal guardianship of his father who lives on his own.
>
> The undersigned is persuaded [Trimble] should avoid concentrated exposure to vibration, noise, and pulmonary irritants in view of his consistent reports that these are triggers to his headaches or exacerbate his headaches. The undersigned is also persuaded [Trimble] would do better working indoors where he could wear sunglasses because of his consistent reports of sensitivity to light. The undersigned is also persuaded it is reasonable to limit [Trimble] to light work, because he has reported that exertion can trigger or exacerbate his headaches.

(Administrative Record at 16.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Trimble's treatment history, medical history, functional restrictions, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Trimble's subjective allegations of disability were not credible.

*See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Trimble's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. Shivapour's Opinions*

Trimble argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Shivapour. Specifically, Trimble argues that the ALJ failed to properly weigh Dr. Shivapour's opinions. Trimble also argues that the ALJ's reasons for discounting Dr. Shivapour's opinions are not supported by substantial evidence in the record. Trimble concludes that this matter should be remanded for further consideration of Dr. Shivapour's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has

17

offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear

18

to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed the opinions of Dr. Shivapour as follows:

> In completing a questionnaire signed and dated February 18, 2011, Dr. Shivapour reported diagnoses of migraines (intractable), migraine variants, and depression/anxiety. She indicated [Trimble] was having about two to three migraines per week and that bright lights, noise, and stress triggered these headaches and that bright lights and noise made these headaches worse. She indicated that medications and lying in a dark room made [Trimble's] headaches better. Dr. Shivapour indicated that per [Trimble's] report, [he] would generally be precluded from performing even basic work activities and would need a break from the workplace, would need unscheduled breaks during the workday, would be incapable of even 'low stress' jobs, and would likely be absent more than four times a month.[] The undersigned gives no weight to these indications of functional limitations, because Dr. Shivapour made it clear that these were based on [Trimble's] report rather than on any independent or objective assessment of functional limitations by her or other health professionals.

(Administrative Record at 16.)

Having reviewed the entire record, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Shivapour. Also, the Court finds the ALJ provided "good reasons" for rejecting Dr. Shivapour's opinions. *See Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 301.

### 3. *Hypothetical Question*

Trimble argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments. Trimble also

argues that the ALJ's hypothetical was incomplete and did not contemplate all of his functional limitations. Trimble maintains that this matter should be remanded so that the ALJ may provide the vocational expert with a proper and complete hypothetical question.

Hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

Having reviewed the entire record, the Court finds that the ALJ thoroughly considered and discussed both the medical evidence and Trimble's testimony in determining Trimble's impairments.[6] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

---

[6] *See* Administrative Record at 12-16.

## VI. CONCLUSION

The Court finds that the ALJ properly determined Trimble's credibility with regard to his subjective complaints of disability and pain. The ALJ also properly considered the medical evidence and opinions in the record, including the opinions of Dr. Shivapour. Lastly, the ALJ's hypothetical question to the vocational expert properly included those impairments substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

1.  The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.  Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.  The Clerk of Court is directed to enter judgment accordingly.

DATED this _29th_ day of August, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA